McALESTER URBAN RENEWAL
AUTHORITY, Appellant,

v.

Mary Jane LORINCE et al., Appellees.

McALESTER URBAN RENEWAL
AUTHORITY, Appellant,

v.

Amandy NOELS et al., Appellees.

Nos. 43831, 43832.

Supreme Court of Oklahoma.

Dec. 4, 1973.

Rehearings Denied March 22, 1974.

James B. Bratton, Bratton, Allford & Ashmore, McAlester, for appellant.

Delbert Brock, Tulsa, for appellees.

DOOLIN, Justice.

We are presented in these cases with the attack upon the array or panel of veniremen called in Pittsburg County for jury duty; as well as questions as to the competency of witnesses; the application of the reasonable probability test to the highest and best use of the condemned property; and, other kindred matters.

The pertinent facts necessary for the first portion of this opinion reveal the September, 1969, District Court docket in Pittsburg County included several condemnation cases wherein McAlester Urban Renewal Authority (referred to herein as "Authority") was condemner. At least three condemnation cases had been tried the previous week of the term, and the venire consisted of 45 jurors who had been together as a panel during the term. Before trial the Authority objected to the panel by a Motion for Continuance on the grounds that it was impossible to get a fair or impartial trial. We note that because a jury had been impaneled in a separate case on the same day of trial, the available number of jurors was reduced to 33. Authority's objections recited reasons: the veniremen undoubtedly had discussed condemnation cases, had listened to the previous trials of condemnation cases as spectators, and those persons who had served as jurors in the condemnation cases had formed and expressed opinions in such matters. Authority further argued that a fair and impartial trial was impossible because the same witnesses who were subpoenaed in the instant case had appeared and testified in the condemnation cases of the week before, and that those persons who had served on the previous jury and heard the same were disqualified. The trial judge overruled the Motion for Continuance.

Voir dire examination of jurors proceeded. At the close of the qualification of the jurors, and after the jury had been sworn, the Authority renewed is previous objections and arguments as to the jury's array

and pointed out that six jurors "in the box" had sat in the previous condemnation suits the week preceding. Authority further argued that since it had exhausted all but one of its pre-emptory challenges, it would be impossible to remove the five remaining "experienced" jurors with one challenge. Voir dire is preserved in the record and a careful reading indicates that no formal objection for cause was made individually by the Authority. In this particular, we note however, that, prior to the examination, Authority's Motion for Continuance was presented in chambers, and the trial judge stated that the question of competency of jurors was primarily one directed to his sound discretion and that "I am sure that we can decide this (question) after voir dire."

A challenge to the array has been held to be an improper mode of raising the question of the incompetency of a juror on the ground of previous service in another case. U. S. v. 662.44 Acres of Land in Williamson County, Illinois, 45 F.Supp. 895 (1942). Examination of our civil procedures, 12 O.S.1971 § 571 et seq., reveals no authority for a challenge to the panel; we note, however, that such a challenge to the array or panel is provided for in the criminal procedures, 22 O.S.1971 § 633 et seq. We also find that such criminal procedure is directed to material departures from form or manner of summoning juries such as the drawing and return of the jury, bias of the officer summoning or intentional omissions, etc.—not to the previous experience or service of a juror or because a juror has an opinion. There is a wealth of criminal cases which are not helpful except for their historical or sociological background.

■ If a juror be disqualified for previous service or because he has formed an opinion, it is upon statutory grounds only, 12 O.S.1971, § 571 or 38 O.S.1971 § 28.

■ Challenges for cause under § 571 are properly and ordinarily made on an individual basis at the time of qualification

or questioning of the prospective juror, not by a motion or objection after the jury has been sworn. In this case, however, application of this rule would be unjust and harsh because of the trial court's remark "I am sure we can decide this (question) after voir dire." We treat this action by the trial court as reserving a decision until after the examination of the jurors, but by so stating we do not intend to say that such procedure is approved by this Court beyond its specific application to the facts in this case.

The record reflects that none of the jurors who tried this case, including the six jurors who had previously served in the condemnation cases of the week before, felt themselves to be disqualified. Each stated that he knew of no reason why he could not and would not act as a fair and impartial juror. All those jurors who had served in condemnation cases also stated that the fact they had heard evidence from the same witnesses as subpoenaed in the instant case would not influence their decision nor would they tend to give more weight to such witnesses' testimony because of having heard a previous condemnation case.

We have previously stated:

"A large discretion is vested in the trial court in determining the competency and qualifications of jurors and its action should not be disturbed unless an abuse of such discretion is clearly apparent. Lee v. Swyden, Okl., 319 P.2d 1009 (1958); Montgomery Ward & Co. v. Curtis, 199 Okl. 525, 188 P.2d 199 (1948); Meier v. Edsall, 192 Okl. 529, 137 P.2d 926 (1943); Indian Territory Illuminating Oil Co. v. Carter [177 Okl. 1], 57 P.2d 864 (1936)."

■ We are likewise committed to the rule that the trial court's ruling on a challenge of a juror for cause will not be disturbed unless there has been an abuse of discretion shown. Dyal v. Norton, 47 Okl. 794, 150 P. 703 (1915). See also Rhodes v.

Lamar, 145 Okl. 223, 292 P. 335 (1930); Burke v. McKenzie, 313 P.2d 1090 (1957).

The facts in the *Burke* case reveal five cases were filed in the District Court of Sequoyah County against E. J. Burke for the alleged use of poisonous spray which the Plaintiffs said caused damage and loss to their crops and pastures. In the first of the five cases, Burke defended upon the grounds that the drought was responsible for the loss of crops, not his spray. In all five cases Burke was the Defendant; each of the five cases had a different and separate Plaintiff; but, each of the five cases had the same question of fact—liability of Defendant. McKenzie was the second of the series of five to be tried, and a Plaintiff's verdict was returned in that case. Seven jurors in the second case had served on the first case. At least one or more jurors in the second case stated it would take evidence on the Defendant's part to show that he was not responsible because of what he heard in the first case. This Court reversed the second case for new trial, stating "jurors who return a verdict against defendant in an action involving an essential question of fact were disqualified to sit in a succeeding case against the same defendant where the same question of fact was involved."

■■ Authority believes that *Burke* is sufficient grounds for reversal and remand for new trial in this case. With such a conclusion we disagree. In the *Burke* case some of the jurors stated it would require evidence to change preconceived opinions gained from previous experience of a trial. No such expression or opinion was found to be held in the instant case. The fact the jurors decided in the first Burke case was that the Plaintiff's loss was caused by the tortious act of the Defendant—spraying poison. No such essential common fact establishing liability is presented in this condemnation cases or any other, for the sole question is, of necessity, the value of the land condemned. A condemnation case is also the only type of civil action where the Defendant has the burden of proving value. The condemner is always the State or one of its political subdivisions, or a corporation possessed of the power of eminent domain. Thus, when the power of eminent domain is being exercised in a given area by a given Plaintiff there is always the same party Plaintiff in each case and previous service on a condemnation jury is not per se grounds for disqualification for cause.

■ As further grounds for reversal, the Authority urges that lack of qualification of the Defendants' (Landowners') witnesses renders them incompetent to testify. We do not agree. Since, in Wichita Falls & N. W. Ry. Co. v. Harvey, 44 Okl. 321, 144 P. 581 and Wichita Falls & N. W. Ry. Co. v. McAlary, 44 Okl. 326, 144 P. 583, we have been committed to the following rule:

"The question, when opinion evidence is offered, as to whether the witness has been shown to possess sufficient qualifications to express an opinion, is addressed very largely to the sound judicial discretion of the trial court and its ruling that the witness is sufficiently qualified will not ordinarily be disturbed unless it clearly appears that this discretion has been abused."

More recent Oklahoma cases are to the same effect: City of Pauls Valley v. Pruitt, 316 P.2d 160 (1957); Arkla Gas Co. v. Maggi, 409 P.2d 369, 374 (1965); Wilkerson v. Grand River Dam Authority, 195 Okl. 678, 161 P.2d 745, 747 (1945); Finley v. Board of County Commissioners, Oklahoma County, 291 P.2d 333, 336 (1955); Nichols on Eminent Domain § 18.-44(1) pp. 18–201. In *Harvey,* supra, we stated the value of property does not ordinarily involve a question of science or skill upon which only an expert possessed of technical training can speak. A search of the record in this case reveals no abuse of discretion by the trial judge and is no grounds for reversal or remittitur.

Authority's next proposition for reversal goes to the admissibility of evidence of comparable sales. No Oklahoma cases are cited by either of the parties, but this Court has held that the sale price of comparable property is admissible to show valuation of the subject property in other types of actions, Kilborne v. McAllister, 179 Okl. 267, 65 P.2d 516, Chase v. Watson, 294 P.2d 801 (Okl.1956). Evidence of the sale price of property in prior sales has also been held admissible in condemnation proceedings in many jurisdictions; see the many cases cited in Epstein v. City and County of Denver, 133 Colo. 104, 293 P.2d 308 (1956).

In Oklahoma Turnpike Authority v. Foster, 398 P.2d 503 (Okl.1965), evidence of previous sales of lots was admitted:

"That appraisal of condemnee's damage by her own witnesses was based largely upon certain previous sales of lots in platted residential addition did not render their testimony incompetent and inadequate to support verdict for $11,000 for acquiring rights in and upon 5.54 acres of 15-acre tract located in same quarter section as undeveloped residential subdivision.

Weight that should be given lot sales in undeveloped residential subdivision located in same quarter-section as 15 acres of which 5.54 acres were appropriated for highway was for jury."

We have also held in Finley v. Board of County Commissioners, Oklahoma County, supra, an expert witness may testify as to the value of land taken in condemnation even though his conclusions are based in part or entirely upon hearsay evidence. To the same effect, see Owens v. Oklahoma Turnpike Authority, 283 P.2d 827 (1955), appeal dismissed 355 U.S. 893, 76 S.Ct. 155, 100 L.Ed. 785, rehearing denied 360 U.S. 94, 76 S.Ct. 300, 100 L.Ed. 823. See also Harwell v. U. S., 316 F.2d 791 (10th Cir. 1963).

■■■ We conclude that whether or not evidence of comparable sales should be submitted to the jury is a matter directed largely to the trial court's discretion and that the ruling of the trial court will not be grounds for reversal or disturbed unless there has been an abuse of discretion. Thus, finding no abuse of discretion in the instant case, we will not reverse. See Wichita Falls & N. W. Ry. Co. v. Holloman, 28 Okl. 419, 114 P. 700; City of Tulsa v. Horwitz, 131 Okl. 63, 267 P. 852; Kelly v. Oklahoma Turnpike Authority, 269 P.2d 359 (Okl.1954); Owens v. Oklahoma Turnpike Authority, supra; State ex rel. Dept. of Highways v. Robb, 454 P.2d 313 (Okl.1969).

■ We turn to instructions. Authority submitted one requested instruction which dealt with restrictions and limitations; specifically, the present and previous zoning did not allow commercial use. Examination of the courts' instructions, particularly Nos. 7 and 9, indicates, in our opinion, that the court adequately and accurately covered the law applicable to properties to be condemned and we find no reason for, or merit in, condemner's allegation of error as to instructions.

"Instructions are to be considered as a whole, and if instructions considered together fairly submit issues, and it does not appear probable that rights of complaining party were prejudiced by alleged error in refusing to give requested instructions, a verdict against such party will not be set aside. Texas Pipeline Co. vs. Cobb, 365 P.2d 1010 (1961)."

See also Grand River Dam Authority v. Martin, 192 Okl. 614, 138 P.2d 82; Finley v. Board of County Commissioners, Oklahoma County, supra.

We have not overlooked Authority's principal complaint that the court failed to instruct that the zoning in effect at the time of taking was residential and commercial use was prohibited. In our opinion, instruction No. 7, which indicated that in determining value the jury might take into consideration the possibility for all uses,

both present and prospective, for which the property was adapted by persons of prudence and wisdom, was proper. Instruction No. 9 informed the jury that the premises had first been zoned for residential use and prior to taking broadened to include educational use. It further informed the jury that the ordinances of the City of McAlester provide for change of zoning but that there always remained an element of uncertainty of successful change of same which the jury should consider. We find no abuse of discretion in the trial court's action.

In order to review the remaining propositions advanced by the Authority, we believe additional facts are necessary. McAlester Urban Renewal Authority came into existence by virtue of the provision of 11 O.S.1971 § 1651 et seq. In 1967 the City of McAlester adopted a plan for Area A, Eastview Project, which included the premises of the Defendant Landowners; this plan was filed of record in Pittsburg County in December of 1967. The lands in question were zoned for residential use when the plan was adopted, but prior to the date of taking, July 1, 1969, the property had been rezoned allowing educational use in addition to residential use. Under neither zoning was commercial use possible without rezoning procedures.

The Landowners called three witnesses —J, R, and themselves. When J testified he stated his qualifications as being an attorney, possessed of a real estate license, active in real estate and investments, and acquainted with values in the area concerned. Over the Authority's objection as to qualification and that the present zoning prohibited commercial use, J was allowed to testify that the property was best used for commercial purposes. He was likewise allowed to testify as to the probability of rezoning which would allow commercial use. J fixed the value of both parcels in question on a square foot basis and at the same figure. On cross-examination by the condemner comparable sales were cited by J. Witness R, called by the Landowners, qualified as experienced in real estate and insurance, and had been in real estate appraisal work for 14 years. R testified that one of the parcel's best use was commercial (middle-sized super market) and that the other's was residential. He fixed a slightly higher value upon potential commercial use than upon residential use. No objections to R's testimony were made as to his qualifications. A Motion to Strike his testimony on the ground that his reference to commercial use was unauthorized was made by the condemner at the end of testimony in chief. Cross-examination by the Authority brought out certain comparable sales by the condemner.

Authority's remaining propositions: (1) Reversible error by the trial court when it allowed Landowner to present evidence of commercial value when the property was zoned for residential purposes and its objection that Landowner made no proof of reasonable probability of rezoning to commercial use; (2) Error in failing to instruct the jury as to the applicable law as a whole; and, (3) Judgment so excessive as to per se indicate passion and prejudice; —are answered by our holdings in McAlester Urban Renewal Authority v. Lorince, 499 P.2d 925 (1972).

Since we have considered all the evidence in this case, and carefully reviewed same, we refuse to reverse the trial judge upon the remaining three propositions last outlined; for, the holding as stated in McAlester Urban Renewal Authority v. Lorince, supra, has disposed of this issue. There is no reason to reverse the trial court.

 There remains only the question of attorney fees on appeal. In support thereof, Landowners' attorney draws the attention of this Court to 11 O.S.1971 § 1663(f) which provides as follows:

"In any condemnation proceedings in which a jury trial is had, if the verdict of the jury exceeds the award of the

**1352**

court appointed commissioners, the court may reward a reasonable attorney fee to the defendant or defendants which shall be paid by the condemner."

Authority first contends that the motion made by Landowners' attorney is not timely under 12 O.S.1971, Ch. 15, App. 2, rule 1.29. We hold this rule is not applicable, since it relates specifically to taxation or evidence in an appeal. Authority next contends that attorney fees are not ordinarily allowed in the absence of express statutory authority, and that the statute relied on by Lorince and Noels applies solely to the trial court and is not applicable to fees on appeals. An examination of this statute does not show this to be true. The statute simply provides under what circumstances in a condemnation proceeding of this nature attorney fees may be awarded. It does not expressly limit the award to fees for trial of the condemnation proceedings, or to awards by the trial court. Where, as in this case, an award of attorney fees is permitted by statute, and the Appellees are compelled to defend an appeal of a judgment in their favor by preparation, filing, and presentation of defenses, we hold that the Appellees are entitled to a reasonable award of attorney fees for such necessary services on appeal. See Lavender v. Lavender, 435 P.2d 583 (Okl. 1967). In view of the amounts of the condemnation awards herein, $2,180.00 to Landowner Lorince and $2,483.00 to Landowner Noels, and the efforts required in defending these appeals, we are of the opinion that the Authority should be required to pay the total of $500.00 in both cases as additional compensation to the Appellees' attorneys for services rendered in these cases.

Judgment affirmed.

WILLIAMS, V. C. J., and IRWIN, BERRY and SIMMS, JJ., concur.

BARNES, J., concurs in result.